State of Todd Murray versus the United States 2024-2053. Mr. Rasmuson. Thank you, Your Honor. May it please the Court, represent the State of Todd Murray and his mother, Debra Jones, who is the primary named plaintiff in the case. I want to start off, actually, with something that's not quite as important in this case, and that is, it's important to us, but not as important to the case, and that is... Well, use your time as you... Thank you. I know. Yes, I know. But I wanted to make clear, Todd Murray had only one fire criminal charge, a misdemeanor, small fine. He had... There was no evidence he had meth in his system. There was no evidence he was a gang member. There was no evidence on connecting this gun to him. This is a spoliation case. Right. Right. The United States has tried to demonize Mr. Murray in order to try and win on this case. So I want to... We discussed all those issues in our brief, and we discussed why the evidence that the United States relies upon isn't useful, isn't admissible, doesn't show any of those facts. But the claims court had a 113-page decision, opinion, and decision, holding that the adverse inference of spoliation was overcome. Right. We disagree in what? We disagree because as the adverse inference was written, and the file we prepared for was, the adverse inference was that the United States had to show by evidence or somebody other than Norton that Mr. Murray's blood or tissue or DNA was on the gun. And it didn't offer any evidence on that. It didn't... So it didn't overcome the presumption the judge had put in his spoliation order. And instead what we ended up with was just the same thing we ended up with before, which is he said that we're going to basically say the United States, this, the only spoliation remedy or sanction here was that if the case was exactly in equal pose, that Mr. Murray would win. So not a spoliation sanction related to the fact that the evidence on the gun was missing, but just a presumption on the merits of the case. They said, well, that gets you to a trial because the United States can't win unless it goes to a trial then on that. But it wasn't a spoliation, a meaningful spoliation sanction, which is what this Court said he should do. And what his spoliation order really would have accomplished if he had then used that. And so, again, that was the trial we prepared for. So what does it mean that they didn't show by any competent evidence anyone other than Norton that Mr. Murray had, Mr. Murray's DNA was on this gun. Mr. Murray's blood was on this gun. And once we say what, where does that then take us? What it takes us to is that we met our burden of proof. So instead of doing that. The government had no duty to secure evidence because there was no reason to suspect Norton of the crime. And that's an incorrect statement of law. So that gets us into the force with the gun. There's two guns. Can I just ask, just so that I'm keeping clear. Until Judge Murray just asked you this question, you were talking about evidence regarding the high point. Now we're shifting to the guac and clothing of Norton. Right. Yes. As to which he said there was no spoliation. As opposed to your first argument, which is there is spoliation of the high point because the government destroyed the gun. But no bad faith. And your dispute is whether the sanction was adequate. Our dispute is whether the sanction was meaningful as this court previously required it. Really it's much more related to this court's previous decision. What should the sanction have been? What's that? What should the sanction have been? I think the sanction should have been exactly what he wrote, but not what he applied at trial. It should have been, we're going to presume that this gun doesn't have his blood, tissue, or DNA on it. And then where does that lead us if we assume that and they have to show that it does have one of those things on it by somebody other than Norton. If they, if that's what it had done, that's the appropriate way to construct a sanction, which is related to the fact that the gun is no longer here and we can't test it to see if it has any of those things on it. And so then we follow the evidence. And the evidence then is if it doesn't have his blood, tissue, or DNA on it, much more likely than not, that was not the weapon that was used to shoot him. It's just. Do you agree that the government had independent evidence of possession by Murray of the gun? No, we don't agree with that. They tried to, what they tried to do was introduce a statement on plea of guilty to try to link the gun to the driver, then to link it to Todd Murray. And what they used then was a statement on plea of guilty that didn't say that. And then they tried to use some hearsay evidence subsequently that was used for that document and said, oh, well, therefore we can say he had that gun. But what they tried to use was a statement on plea of guilty that did not reference Mr. Kerr, did not say who the gun was from, just said that he had bought it for somebody else. Okay, but suppose we disagree with you about that and that there was evidence of possession of the gun by Murray. So where are we now? That we still wouldn't have that there was his blood DNA or tissue on the gun by any independent sources. We don't have anybody saying he handled that gun that day, other than Norton. Well, if he had possession, he handled the gun, right? If the gun was in the car, sure. No, no. If you argue about the guilty, if the evidence was sufficient to show possession, I'm not sure that the Court of Federal Claims was assuming anything about blood tissue being on the gun, right?  We don't have any evidence of his actual possession of the gun, even if we have evidence that Mr. Kerr had possession of the gun. We don't have any evidence other than Norton's testimony that Mr. Murray had the gun. So if it was Mr. Kerr's gun and was in Mr. Kerr's vehicle, then that would be a different matter. But what the United States was required to show was that there was, that from somebody other than Norton, that Mr. Murray actually possessed the gun, and they didn't offer anything on that, even if they could link the gun to Mr. Kerr. I want to turn, though, to the other main issue in the case, which is the Glock gun. The issue here is control of the Glock gun. And this, this is just, the FBI's authority in a crime scene, they have the authority to take. Let me tell you the problem I have. Okay. And this relates to the question that Judge Lurie asked. At the time of the event, as opposed to the time when the other gun was destroyed, at the time of the event, I'm having difficulty seeing why there was any culpability on the part of the government in not preserving Officer Norton's gun or his clothing, even assuming the other aspects of spoiliation. Right. And I, the court of federal claims found that litigation could reasonably be anticipated at the time of the event, which it seems to me is problematic. I mean, yes, there was reason to anticipate litigation when the other gun was destroyed, but at the time of the event, why was there a reason to anticipate litigation so that there was some sort of culpability in not securing Norton's gun and the clothing? Well, first of all, this court would only review that for abuse of discretion, as we discussed in our brief. And since the trial judge said, based upon the evidence that's been presented at the spoliation motion, I find that it was reasonably foreseeable. It would be incredibly difficult to vacate that on abuse of discretion. But I wanted to go into what we discussed in our brief on spoliation and why it was reasonably foreseeable. We focused on it a lot. We went into this history of the state of Utah and its officers just going on to the reservation and trying to arrest tribal members, despite having lost multiple times in the Tenth Circuit and been told they couldn't do that. And so everybody knew, and this is what the district court in Utah first said, oh, obviously there was going to be litigation. The state just went on to the reservation. They went hunting for somebody who hadn't committed any crime, hadn't done anything, and they go out there and then he ends up dead. Of course there's going to be litigation. We also have Norton asking for an attorney that day. We have the Murray family going within the next week and having their own attorney. Everybody was already in that mode immediately, and it was because of that history. And so we discussed that history with Judge Hertling, and he then issued the finding. Notably, the United States didn't dispute that part of it. It didn't dispute any of those facts that Judge Hertling found as significant to find foreseeability. So we think foreseeability, even though it was a more difficult question, I think, at the trial court, at this court I think it's fairly easy. Counsel, you haven't indicated any time that you want to save for rebuttal. Right. Which is your choice. Yes. Do you want to maintain that? I'm going to continue. Hopefully for one more minute because I want to get into control and the Fourth Amendment. Because what the United States, the FBI at the crime scene, has the authority to confiscate the evidence. And we have this very weird situation where the United States is trying to gut the FBI's investigative authority. Here we have somebody who came from off the reservation, was not there in investigative capacity, swaps identical looking guns with Norton, takes Norton's gun, and then the court says, oh, he has a Fourth Amendment right to not provide that gun that was at the crime scene when he came to the crime scene and took the gun, that he has a Fourth Amendment right not to provide that gun to the FBI, that the FBI doesn't have control over a gun that was admittedly shot at a crime scene. And so if this is the case, this is one where we would say, if that were the case, that would be a major Fourth Amendment decision by this court. That the FBI agent can't take a gun at a crime scene from somebody who had taken it from the person who'd shot it at Mr. Murray. So that's the Fourth Amendment issue. And it is a big, it is a significant issue, because that's the judge's decision was on that legal issue. It wasn't on other things. It was on that legal issue, and that you review de novo, of course. And so our view is that you have to impose police and sanctions on that gun, because it was clearly within the FBI's control. Thank you. You can save the rest of your time, Daniel. Ms. Hanson-Young. Good morning, Your Honors. May it please the Court, my name is Tecla Hanson-Young, and I represent the United States. The CFC correctly applied the spoliation sanction at issue here, and even setting that aside, even if it didn't, Jones still got to trial, and at trial, failed to establish by preponderance of the evidence that Norton killed Mr. Murray. And that is the important factual finding that this Court should focus on when deciding whether to reverse and remand to the CFC. Can we talk for a minute about the spoliation issue with respect to the Glock? I have some questions as to whether this Fourth Amendment theory by the Court of Federal Claims was correct. If, in fact, there had been reason to believe that Officer Norton had shot and killed Murray, I think there's a pretty good argument that they should have secured the gun and could have secured the gun without violating anybody's Fourth Amendment rights. But at the same time, you argue, and I think with some force, that there was no reason for the FBI agent to secure the gun because there was no reason to believe that a crime had occurred at that point. Could you address that concern that I just expressed? Sure. And you are exactly right. This Court in the last decision held that the Fourth Amendment limits the FBI's ability to have control, exert control over evidence. So at the spoliation hearing, the CFC – I'm having trouble seeing why there's a Fourth Amendment right by the Well, Jensen – if needed. Sure. Jensen – so there's a couple of things. Jensen had possession of the weapon at the time – of the gun, the service gun at the time that Agent Ashdown got to the scene. So he, at a minimum, had a possessory interest in Norton's gun. But stepping back further, Agent Ashdown had no reason to believe that Officer Norton had committed a crime when he got to the scene. So there would have been no probable cause for him to seize Officer Norton's service gun. And the reason why Ashdown had no reason to believe that Norton had committed a crime was based in both the physical evidence at the scene that was available to him, the location of where Mr. Murray's body was, was more than 100 yards away from the spent shell casings that came from Officer Norton's gun. There was no dispute that Officer Norton had fired his gun because there were spent shell casings that were attributable to his Glock and that were different from the shell casings from the high point. So he saw no need to seize Officer Norton's gun, particularly where Officer Norton's clothing was pristine and clean, and there are photographs that corroborate that conclusion, that finding of the CFC. And all of the officers' testimony at the scene of the incident corroborated Norton's account of what had happened, that there had been a high-speed pursuit, that two of the passengers of the car had gotten out and run, and that the officers had followed them, and that Mr. Murray had shot himself. Even at the spoliation hearing, the government put on expert testimony showing that Agent Ashton's conclusion that there was no probable cause was reasonable, also concurring that there would have been no probable cause to seize either Norton's gun or his clothing. And I think it's also true. Sure. Is there any distance between the following two things? One is that it would have been unlawful under the Fourth Amendment to seize the Glock, and it was permissible, even for spoliation purposes, not to seize the Glock because we didn't see any evidence of a crime. Whether or not evidence of a crime that would involve that gun is constitutionally required. Well, this court has previously held that the FBI's ability to exert control over evidence for spoliation purposes is limited by the bounds of the Fourth Amendment. So if the Fourth Amendment prevents a search or a seizure, then the government wouldn't exert control over that evidence for spoliation purposes, even if it had jurisdiction over the scene of the incident. So does, I mean, I guess I'm remembering one aspect of the discussion, I think, in one of Judge Dyke's questions as well. Does that require, that way of looking at this, require that we agree that the municipality had a Fourth Amendment right here? No, and the CFC, in fact, didn't reach that question, and that question does not need to be reached here because at the time that Agent Ashdown was on the scene, there was no reason for him to believe that there was any other crime other than the illegal possession of a weapon by Murray and Currup. That was the crime he was there. There was a death of an individual on a reservation. He was there investigating the high-speed chase, what had happened subsequent to the car crashing and the people fleeing, and that's what he was looking into. There was no evidence that would have suggested to him that Officer Norton had shot Mr. Murray at the time and no reason for him to believe that he needed to take his gun, take his clothing. And there was testimony at the spoliation hearing, again, that to do so would have flown in the face of all the available evidence to Agent Ashdown at the time. Let me just, I guess, return to a question that I started with. Suppose, hypothetically, I agreed with you about everything you just said and that Judge Hertling found no reason to think that there was a crime involving Mr. Officer Norton or the Glock. Would that by itself, without any invocation of the Fourth Amendment, be a sufficient basis to say that Judge Hertling was right in saying there was no spoliation by virtue of not taking the Glock into possession? I think I understand your question, and I think the answer is right. Is that you're right? That would be sufficient. The Court doesn't need to address the Fourth Amendment question because if Agent Ashdown didn't perceive that the evidence would be used in future reasonably foreseeable litigation against the United States, there would be no potential for spoliation. Well, we're confusing two things here. One is the potential for litigation, and the second question is whether there was probable cause to believe that a crime had been committed. Right. The Court of Federal Claims found that there was no reason to believe a crime was committed, but did conclude that there was a likelihood of litigation foreseeable at the time of the incident, which it seems to me may well have been wrong. But is it sufficient? Suppose there's no probable cause for a crime to be committed, but the agent anticipates that there's litigation. Is there an obligation to secure the Glock under those circumstances? Under this Court's prior ruling, if litigation against the United States was reasonably foreseeable and the Glock and Officer Norton's clothing were reasonably foreseeably, would be reasonably foreseeably used as evidence in that litigation against the United States, then the United States would likely have had a duty under this Court's prior precedent. So we have to say there are two findings here. One, no probable cause that Officer Norton had committed a crime, and no probability of no foreseeable litigation. I don't think the Court has to make both findings. There are two things I think the Court could make either finding. And maybe I wasn't clear enough in my prior answer to your question. What I am trying to say, what I had hoped I was saying, is that if the litigation against the United States was reasonably foreseeable and the Glock and the clothing reasonably would have been used as evidence in that litigation, then the government would have had control. But the government, it would have passed that first threshold, but the government still wouldn't have control over that evidence unless it also had probable cause to seize that property. My own view is that's not correct to say that both things have to be true. I mean, I think if there's no foreseeable litigation but there were probable cause to believe that Officer Norton had committed a crime, that would be sufficient to obligate the United States to secure the gun. I think if either the litigation against the United States under the Bad Men Clause of the U Treaty was not reasonably foreseeable to an objective person in Agent Ashdown's position, then there was no possibility of spoliation of evidence by failing to collect that evidence. In other words, the specific claim brought by Jones here against the United States had to be objectively reasonably foreseeable to someone in Ashdown's position in order for the possibility of a spoliation sanction to apply. And in addition to that, Agent Ashdown also had to have probable cause to seize the gun and the clothing. And we think that the CFC ultimately got to the right conclusion in not applying a spoliation sanction for the government's decision not to collect the gun and the clothing, but it erred to the extent that it found that litigation against the United States under the Bad Men Clause of the U Treaty was reasonably foreseeable to Agent Ashdown, even knowing that there is litigation between the Ute tribe and Utah over the boundaries of the reservation. Well, I guess the answer to this conundrum is that if the FBI agent suspected that Norton had committed murder, that would itself suggest the likelihood of litigation. Right, and so that, I guess, could be a sufficiently independent bait. Well, not for spoliation in a claim against the United States, right? I mean, that may have meant that the FBI bungled the investigation into a possible second crime committed by Officer Norton. If Agent Ashdown believed or had probable cause to believe that Norton had murdered Mr. Murray and then failed to collect the gun or Officer Norton's clothes, that arguably would have been a bungled investigation. But he didn't have that. He didn't have that probable cause. And secondly, the FBI has discretion in how it handles its investigations, and a failure to properly conduct an investigation wouldn't by itself give rise to a spoliation sanction against the United States in a claim for monetary compensation against the United States. And I would also add that at the spoliation hearing, the government submitted evidence, and the CFC also found it to be credible, that Agent Ashdown complied with the FBI's requirements concerning how to handle investigations, and that Agent Ashdown did nothing wrong in investigating the incident on April 1st when he was at the scene. He did everything he was supposed to do. Can you just remind me? I'm sorry, I don't remember. In your red brief, do you take issue with, i.e., make an argument against Judge Hertzling's finding about reasonable foreseeable future? We do. We argue that it's an independent basis upon which... And to the other gun, why did the sanction that Judge Hertzling adopted, in fact, why was it enough? In what way did it... Did we use the word augment in our last decision the burden on the government? I have two quick responses to that and then a more detailed response. My first response is even Jones agrees that, in her words, if the sanction had been properly applied, it would have been sufficient as stated. And secondly, it augmented the prior sanction in that it enabled Jones to get to a trial where she could cross-examine witnesses, present evidence, present her theory of the case. This litigation had been decided on summary judgment twice before and both times reversed by this court. And after that, she had a full and fair opportunity to press her claims against the United States. And the CFC found that she still came up short and could not show by a preponderance of the evidence that Norton had killed Mr. Murray. Now, I want to get a more detailed answer for you as well. The sanction was nuanced. The CFC held that there was a rebuttable adverse presumption that there was no DNA, blood, or fingerprints of Murray on the gun. And that directly addressed Jones' alleged prejudice that if it had been tested, it would have shown that there were none of those things on the gun. So it spoke to her specific claims of prejudice. Now, the presumption was rebuttable, but even if the government rebutted the presumption, what was found on the gun would have been treated as unknowable. So the best the government could get to was that we wouldn't know what was found on the gun, and the government also couldn't rely on secondary evidence related to guns, such as the un-ejected shell casing, which we would have argued that it would have shown that the gun was being held loosely by Mr. Murray. So there was tooth to this sanction. Now, the CFC also took into account the fact that the government only negligently destroyed the gun through its routine forfeiture proceedings and also accounted for the fact that Jones didn't seek to preserve the weapon. So it was a balanced sanction. And I just want to... I see I'm out of time, but I just, if I may, make one quick point here that I think it gets a little complicated because what the CFC found to rebut this adverse presumption is essentially the same inquiry as to what happened on the events that day. So Jones takes issue and appeal with the fact that the government didn't provide evidence that Mr. Murray's blood or DNA was on the gun, but we didn't need to do that to rebut the adverse presumption because we showed a connection between the gun and Mr. Murray and we also showed through physical evidence and numerous other testimonial evidence that Norton did not kill Mr. Murray. And that totality rebutted the adverse presumption. But I'd also add, even if this court finds error in that the adverse presumption shouldn't have been rebutted, it still wouldn't make a difference because as the CFC itself found in its decision, Jones never presented her theory of the case or offered any proposed findings of fact that would explain how Officer Norton murdered Mr. Murray. And so while this is a terrible incident that occurred, it is not a crime and it is not something that the United States should be held liable for monetarily to the Jones family. Thank you, counsel. Mr. Rasmussen has some rebuttal time. Thank you, counsel. I want to go back to the last decision in this case was to remand to figure out when litigation was reasonably foreseeable. The lower court, the CFC, did that and it held that it was reasonably foreseeable from April 1st. And again, you review for abuse of discretion. The United States didn't even preserve this issue because they didn't make an argument on that. They made a different argument of why it wasn't reasonably foreseeable but not related to the CFC's findings. So the findings should not be disturbed. The other thing this court remanded for was was the United States in control of the Glock? And contrary to the United States' argument, I mean, all Fourth Amendment cases are directly contrary to their argument. It is not whether there is probable cause that Norton committed a crime. You're at a crime scene. The FBI isn't supposed to jump to the conclusion and say we figured out who committed the crime. Now we can collect the evidence against them. At the crime scene, the FBI collects the evidence. So it has the authority to collect evidence at the crime scene. It doesn't have to be that it's evidence that Norton committed a crime. It has to be evidence of a crime. It has to be related to the crime. And here we've got Norton admittedly shooting a gun. The officer, Agent Ashdown, goes out there. He doesn't even know if he ever spoke to Norton. He doesn't know who he spoke to, but somebody told him Norton said that Todd Murray shot himself. He knew Todd Murray had been shot. He knew Norton's gun had been shot off. This is evidence at a crime scene. You collect it. You take it back. You don't make those decisions out in the field. And that's what all of the Fourth Amendment cases say. And that's why it's really surprising to have the United States come in here and argue that the FBI at a crime scene, where somebody who comes to the crime scene and takes a key piece of evidence, and we've already determined this is a key piece of evidence, that it would have been dispositive one way or the other likely, takes a key piece of evidence and says, okay, now I've got it, FBI, you can't have it, because now I have a Fourth Amendment right because I came to the crime scene. This is, if somebody, and this has happened, if somebody else tried to come to a crime scene, they wouldn't be allowed in precisely because of this. This was Norton's supervisor. He came there in a non-investigative capacity because Norton's his friend. He comes there. He swaps guns, identical-looking guns with Norton. And then to say that he has a Fourth Amendment right? He doesn't. It's not evidence that he committed a crime or that Norton committed a crime. It's that it's evidence of a crime at a crime scene. And so in our brief, we discuss that in detail. And that's why the United States argument, I'm really, really shocked that they would make this as somebody who's prosecuted a lot of cases and defended a lot of cases. The common defense is the police jump to the conclusion. And then they only gathered the evidence they wanted. And this is the United States argument of the Fourth Amendment. That's all they can do. They have to make the decision of who's the criminal and then only collect that evidence. And all of the Fourth Amendment case law is contrary to that. Thank you, counsel. Thank you both, counsel. The case is submitted.